FILED

1 | Law Offices of Robert A. Stutman, P.C.
Ahmed S. Diab, Esq., SBN 262319
2 | 750 B Street, 33rd Floor
3 | San Diego, CA 92101
DiabA@Stutmanlaw.com
4 | Office: (619) 937-6272 ext. 210
5 | Fax: (619) 374-1678
Attorneys for LIBERTY MUTUAL INSURANCE COMPANY
6

2012 OCT -9 PM 4: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

7

8

9

10 |             UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
11

12 | JASON TRABAKOOLAS and
13 | SHEILA STETSON,
individually and on behalf of all
14 | others similarly situated,
15 |              Plaintiffs,
16 |                    v.
17
18 | WATTS WATER TECHNOLOGIES,
INC., WATTS REGULATOR CO.,
19 | WATTS ANDERSON-BARROWS
METAL CORP., WATTS PLUMBING
20 | TECHNOLOGIES (TAIZHO) CO., LTD.,
21 | SAVARD PLUMBING COMPANY.
WOLVERINE BRASS, INC.,
22 | AND JOHN DOES 1-10
23
24 |              Defendants.

**CV12-8661**-GHK
                 (FMOx)
UNITED STATES DISTRICT
COURT - NORTHERN
DISTRICT OF CALIFORNIA

Case No. 4:12-cv-01172-YGR

DATE: NOV. 26, 2012
TIME: 9:30 am
PLACE: 650/Roybal

THE LAW OFFICES OF
ROBERT A. STUTMAN,
P.C.'S MOTION TO
QUASH, MOTION FOR
PROTECTIVE ORDER,
AND MOTION FOR
SANCTIONS

25 |        LAW OFFICES OF ROBERT A. STUTMAN, P.C.'S
26 |                       MOTION TO QUASH,
   | MOTION FOR PROTECTIVE ORDER, AND MOTION FOR SANCTIONS
27

28

Law Offices of Robert
A. Stutman, P.C.

-1-
STUTMAN'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

1       The Law Offices of Robert A. Stutman, P.C. (hereinafter "Stutman") moves to

2 quash, moves for a protective order, and moves for sanctions from the subpoena to

3 testify at a deposition in a civil action (hereinafter "subpoena to testify") and the

4 subpoena to produce documents, information, or objects or to permit inspection of

5

6 premises in a civil action (hereinafter "subpoena duces tecum") issued to and served on

7 Stutman, a non-party, on September 21, 2012 in the litigation in the above federal

8 lawsuit pending in the U.S. District Court for the Northern District of California by

9

10 Defendants, Watts Regulator Co., Watts Water Technologies, Inc. & Wolverine Brass,

11 Inc (collectively, "Watts"). Watts' subpoenas were issued for the sole, improper purpose

12 of harassing Stutman and interfering with Stutman's representation of its clients.

13

14 Moreover, Watts' subpoenas are unduly burdensome as the subpoenas require non-party

15 officer(s) to travel more than 100 miles to testify. The topics of testimony and the

16 documents requested are also irrelevant, unlimited in scope, duplicative, and call for

17

18 non-discoverable, privileged information. A proposed Order is attached hereto as

19 Exhibit A.

20

21                       LAW OFFICES OF ROBERT A. STUTMAN, P.C.

22

23                           /s/ Ahmed S. Diab

24                     By:_____

25                     Ahmed S. Diab, Esq., SBN 262319

26                     750 B Street, 33rd Floor

27                     San Diego, CA 92101

                    **Office**: (619) 937-6272 ext. 210

28                     **Fax**: (619) 374-1678

                    Attorneys for Liberty Mutual Insurance Company

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

STUTMAN'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | BACKGROUND............................................................ | 3 |
| II. | STANDARD OF REVIEW............................................... | 7 |
| III. | ARGUMENT................................................................ | 8 |

A. This Court Must Quash Watts' Subpoena to Testify and Subpoena to Produce Documents and Things ............... 9

    1. The Subpoena to Produce Does Not Allow Reasonable Time for Complian...................... 9

    2. The Subpoena Requires Travel of More than 100 miles...................................................... 10

    3. The Subpoena Requires Disclosure of Privileged or Other Protected Matter........................... 11

        a. Attorney-Client Privilege............................ 12

        b. Work Product Doctrine............................... 15

    4. The Subpoena Subjects Undue Burden and Expenses................................................. 16

B. The Court Should Issue a Protective Order Precluding the Deposition And the Production of Documents of Law Offices of Robert Stutman Pursuant to Rule 26(b)(2)................................................... 18

    1. The Discovery Sought is Unreasonable.......................................... 20

    2. The party seeking discovery has had Ample Opportunity to Obtain the Information Sought..... 20

    3. The Burden and Expense of the Proposed Discovery Outweighs its Likely Benefit............... 21

C. The Court Should Award Sanctions, Reasonable 23

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

Expenses, and Attorney's Fees..........................................

1.    Under Rule 45(c)(1) and 37(a)(5)..........................   23

IV.    CONCLUSION...............................................................   24

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Chevron Corp. v. Salazar*
2011 WL 7112979 (D. Or. Nov. 30, 2011)........................... 23

*Columbia Broad. Sys., Inc.*
666 F.2d 369 (9th Cir. 1982) ..................................... 17

*Dart Indus. Co. v. Westwood Chem. Co.*
649 F.2d 646 (9th Cir. 1980)..................................... 9

*Hickman v. Taylor*
329 U.S. 495, 507-08 (1947)...................................... 19

*High Tech Med. Instrumentation, Inc. v. New Image Indus, Inc.*
161 F.R.D. 86 (N.D. Cal. 1995).................................. 9

*Herbert v. Lando*
441 U.S. 153, 177 (1979)......................................... 19

*In re Subpoenas Duces Tecum*
738 F. 2nd 1367 (D.C. Cir. 1984) ............................... 15

*Iorio v. Allianz Life Ins. Co. of N. Am.*
05CV633 JLS (CAB), 2009 WL 3415689 (S.D. Cal. Oct.
21, 2009) (Not
Reported).......................................................... 11

*Lefkoe v. Jos. A. Bank Clothiers, Inc.*
577 F3d 240, 247(4th Cir.
2009)................................................................ 8

*Moon v. SCP Pool Corp.*
232 F.R.D. 633, 637 (C.D. Cal.
2005)................................................................ 17

*Oppenheimer Fund, Inc. v. Sanders*
437 U.S. 340, 351
(1978)............................................................... 19

*Pacific Gas and Elec. Co. v. Lynch*
2002 WL 32812098, at *1 (N.D.Ca. August 19, 2002)
(Not
Reported).......................................................... 19

*Perrey v. Televisa, S.A. DE C.V.*
CV 09-06508 FMC (RZ), 2009 WL 3876198 (C.D. Cal.
Nov. 18, 2009) (Not
Reported).......................................................... 16

*Price Waterhouse LLP v. First Am. Corp.*
182 F.R.D. 56 (S.D.NY. 1998).................................. 11

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

*re Grand Jury Investigation (Corporation)*
   974 F.2d 1068, 1070 (9th Cir.1992) .................................... 13

*SEC v. CMKM Diamonds, Inc.*
   656 F3d 829, 832 (9th Cir. 2011)................................... 8

*Thoefel v. Farley-Jones*
   359 F.3d 1066, 1074-75 (9th Cir. 2004)...................... 17

*Travelers Indem. Co. v. Metropolitan Life Insur. Co.*
   228 F.R.D. 111, 113 (D.Conn.2005)........................... 17

*Trammel v. United States*
   445 U.S. 40, 51 (1980)........................................... 13

*United States v. Chen*
   99 F.3d 1495 (9th Cir. 1960)................................. 14

*United States v. Columbia Broad. Sys., Inc.*
   666 F.2d 364, 371 (9th Cir. 1982)........................... 9

*United States v. Fort*
   472 F.3d 1106,1120 (9th Cir. 2007)........................... 12

*United States v. Reliance Ins. Co.*
   799 F.2d 1382,1386 (9th Cir. 1986)....................... 12

*Upjohn Co. v. Unitied States*
   449 U.S. 40 (1980)............................................. 13

*Werder v. Marriott International, Inc.*
   W.D. Pa., September 20, 2012 (Memorandum Order)......... 14

**Federal Statutes**

Federal Rules of Civil Procedure

Rule 26 ............................................................. 8

Rule 26(b) ......................................................... 15

Rule 26(b)(1) ...................................................... 19

Rule 26(b)(2) ...................................................... 18, 19, 20

Rule 26(b)(2)(ii) .................................................. 21

Rule 26(b)(2)(iii) ................................................. 22

Rule 26(c) ......................................................... 18, 20, 22, 23

Rule 26(c)(3) ...................................................... 23

Rule 37(a) ................................................................. 23

Rule 37(a)(5) ............................................................ 7, 23

Rule 45... ................................................................. 8, 17

Rule 45(c) ................................................................ 8, 12, 22, 23

Rule 45(c)(1) ........................................................... 7, 22

Rule 45(c)(2)(B) ...................................................... 6, 7, 8

Rule 45(c)(3)(A) ...................................................... 8, 17

Rule 45(c)(3)(A)(i) ................................................... 10, 11

Rule 45(c)(3)(A)(ii) .................................................. 11, 12

Rule 45(c)(3)(A)(iii) ................................................. 12

Rule 45(c)(3)(A)(iv) ................................................. 10, 16, 18

Rule 45(c)(3)(B)(i-iv) ............................................... 9

**Other Authorities**

ABA Model R. Prof. Conduct 1.6 (2012) ................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

1  **Law Offices of Robert A. Stutman, P.C.**
   Ahmed S. Diab, Esq., SBN 262319
2  750 B Street, 33rd Floor
3  San Diego, CA 92101
   **Office:** (619) 937-6272 ext. 210
4  **Fax:** (619) 374-1678

5

6

7

8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 JASON TRABAKOOLAS and          :    UNITED STATES DISTRICT
   SHEILA STETSON,                :    COURT - NORTHERN
12 individually and on behalf of all :  DISTRICT OF CALIFORNIA
13 others similarly situated,      :
                      Plaintiffs,  :
14                                 :    Case No. 4:12-cv-01172-YGR
15              v.                 :
                                   :
16 WATTS WATER TECHNOLOGIES,       :
17 INC.,WATTS REGULATOR CO.,       :
   WATTS ANDERSON-BARROWS          :
18 METAL CORP., WATTS PLUMBING     :    **THE LAW OFFICES OF**
19 TECHNOLOGIES (TAIZHO) CO., LTD.,:    **ROBERT A. STUTMAN,**
   SAVARD PLUMBING COMPANY,        :    **P.C.'S MOTION TO**
20 WOLVERINE BRASS, INC.,          :    **QUASH, MOTION FOR**
21 AND JOHN DOES 1-100,            :    **PROTECTIVE ORDER,**
                                   :    **AND MOTION FOR**
22              Defendants.        :    **SANCTIONS**

23

24     **MEMORANDUM OF LAW IN SUPPORT OF THE LAW OFFICES OF**
       **ROBERT A. STUTMAN, P.C.'S MOTION TO QUASH,**
25     **MOTION FOR PROTECTIVE ORDER, AND MOTION FOR SANCTIONS**

26

27 **I.      BACKGROUND**

28

The Law Offices of Robert A. Stutman, P.C. (hereinafter "law firm" or "Stutman") is not a party to the underlying case, Trabakoolas, et al. v. Watts, et al., 3:12-cv-01172-YGR (N.D. Cal. Mar. 8, 2012), pending in the U.S. District Court for the Northern District of California, where the plaintiffs, Jason Trabakoolas and Sheila Stetson (hereinafter "Trabakoolas," and "Stetson" or collectively, "plaintiffs"), on behalf of themselves and others similarly situated, filed suit against Defendants, Watts Water Technologies, Inc., Watts Regulator Co. and Wolverine Brass, Inc. (hereinafter, "defendants" or "Watts"). Plaintiffs allege defects in toilet water supply line connectors designed and manufactured by Watts. Plaintiffs assert causes of action for negligence, strict products liability, failure to warn, and violations of the California Unfair Competition Law, the California Legal Remedies Act ("CLRA") and the Song-Beverly Consumer Warranty Act. A copy of the First Amended Complaint is attached hereto as Exhibit B. Plaintiffs' prayer for relief includes monetary relief for water damages caused as a result of the failed toilet supply lines as well as injunctive relief for the replacement of the defective lines in the homes of consumers.

Trabakoolas and Stetson each had a homeowners or condominium insurance policy with Liberty Mutual Insurance Company (hereinafter "Liberty Mutual") which covered some of the plaintiffs' losses from water damages resulting from Watts' defective toilet supply lines. Stutman represents Liberty Mutual with respect to subrogation litigation. Many of the cases for which Stutman represents Liberty Mutual in litigation involve defective toilet supply lines manufactured by Watts. In fact,

1 Stutman, as counsel for Liberty Mutual, has sued Watts in many other cases involving
2 defective toilet supply lines.

3
4 On June 22, 2012, Watts issued two subpoenas duces tecum on Liberty Mutual
5 with a total of 40 separate document requests. Copies of the two Watts' subpoenas
6 duces tecum to Liberty Mutual are attached hereto as Exhibit C and Exhibit D. Most, if
7
8 not all, of the 40 requests are irrelevant, overly broad and unduly burdensome. Liberty
9 Mutual engaged Stutman for legal representation in responding to the two subpoenas
10 duces tecum. Liberty Mutual and its counsel conducted a diligent and thorough search
11
12 for all discoverable documents responsive to Watts' 40 separate requests. On July 24,
13 2012, Liberty Mutual served Watts with formal Responses and over 500 documents
14 responsive to Watts' 40 requests.   Liberty Mutual supplemented its document
15
16 production on September 7, 2012, and issued formal Supplemental Responses on
17 September 26, 2012. Liberty Mutual and Stutman spent over 25 work-hours responding
18 to Watts' two June 22nd subpoenas duces tecum, incurring attorneys' fees and costs.

19
20 On September 18, 2012, Liberty Mutual, through Stutman, accepted by waiver of
21 service a subpoena duces tecum issued by the plaintiffs in the underlying action.  A
22 copy of plaintiffs' subpoena to Liberty Mutual is attached hereto as Exhibit E. This is
23
24 the third subpoena issued to Liberty Mutual in this matter.  Again, Liberty Mutual
25 retained the legal services of Stutman to respond to the plaintiffs' subpoena duces
26 tecum.  The plaintiffs' subpoena duces tecum contains 5 separate categories of
27
28 document requests, of which one category has 8 subparts.

STUTMAN'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

On September 21, 2012, Watts delivered two additional subpoenas to Stutman at its office in Brea, California. These two additional subpoenas are the fourth and fifth subpoenas issued to a non-party in the underlying litigation. The subpoena to testify issued to Stutman includes 4 topics of testimony, all of which are entirely inappropriate. Watts' subpoena to testify issued to Stutman is attached hereto as Exhibit F. Watts' subpoena duces tecum issued to Stutman includes 6 categories of documents and things requested to be produced, all of which are non-discoverable. Watts' subpoena duces tecum issued to Stutman is attached hereto as Exhibit G.

Additionally, on September 21, 2012, Watts served another subpoena to testify on Liberty Mutual. This is the sixth subpoena issued to a non-party in the underlying litigation. Watts' subpoena to testify issued to Liberty Mutual contains 15 topics of testimony that are totally irrelevant to the underlying action and call for privileged communications. A copy of Watts' subpoena issued to Liberty Mutual is attached hereto as Exhibit H. Liberty Mutual, through Stutman, is likewise moving to quash Watts' subpoena to testify.[1]

Watts' subpoena to testify issued to Stutman unquestionably violates the attorney-client privilege. The subpoena also requires a representative from Stutman to travel from Fort Washington, Pennsylvania to Los Angeles, California, which is approximately 3,000 miles away, to testify. Stutman provided Watts the opportunity to withdraw its improper subpoena, but Watts refuses to comply. Correspondence between

---

[1] Watts' subpoena to testify to Liberty Mutual was issued from the U.S. District Court for the Eastern District of California. Liberty Mutual's Motion to Quash, Motion for a Protective Order and Motion for Sanctions against Watts for the improper subpoena to testify to Liberty Mutual was filed in the U.S. District Court for the Eastern District of California.

1   Stutman and counsel for Watts is attached hereto as <u>Exhibit I</u>.  Stutman timely served

2   Objections to Watts' subpoena duces tecum upon Watts pursuant to Fed. R. Civ. P.

3   45(c)(2)(B).  Stutman's Objections to Watts' subpoena duces tecum are attached hereto

4   
5   as <u>Exhibit J</u>.

6       Neither Stutman nor Liberty Mutual are parties to this action.   Nevertheless,

7   
8   Stutman and Liberty Mutual have spent a considerable amount of work-hours and have

9   incurred costs and fees associated with responding to the first three subpoenas duces

10  tecum issued in this litigation.  Now, Stutman and Liberty Mutual must spend additional

11  
12  time and resources to oppose three Watts' subpoenas, two of which are issued to

13  Stutman and one issued to Liberty Mutual, all of which are blatant abuses of the courts'

14  subpoena powers.

15  
16      In short, Watts' subpoenas to Stutman are improper because they are unduly

17  burdensome; they require non-party officer(s) to travel more than 100 miles to testify;

18  and the topics of testimony are irrelevant, unlimited in scope, duplicative, and call for

19  
20  non-discoverable, privileged information.  For these reasons, Stutman moves this Court

21  to quash Watts' subpoena to testify and Watts' subpoena duces tecum and further moves

22  this Court to issue a protective order enjoining Watts from seeking discovery from

23  
24  Stutman in the underlying matter.  Stutman also seeks sanctions against Watts for

25  attorneys' fees, costs, and other amounts deemed appropriate by this Court pursuant to

26  Fed. R. Civ.P. 37(a)(5) and Fed. R.Civ.P. 45(c)(1).

27  
28  **II.    STANDARD OF REVIEW**

The U.S. District Court for the Central District of California has jurisdiction over this issue despite the underlying action being litigated in the U.S. District Court for the Northern District of California because Watts' subpoena to testify and Watts' subpoena duces tecum to Stutman were issued from this Court and command that the deposition occurs and the documents are produced in Los Angeles, California.   Controversies regarding depositions of non-parties are decided in the court which issued the subpoena (where the deposition is being taken or the documents are to be produced), unless the non-party consents to determination elsewhere. SEC v. CMKM Diamonds, Inc. 656 F3d 829, 832(9th Cir. 2011); but see Lefkoe v. Jos. A. Bank Clothiers, Inc. 577 F3d 240, 247(4th Cir. 2009).

Rule 45(c)(3)(A) states that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it subjects a person to undue burden." Fed.R.Civ.P. 45. Objections to a subpoena to produce must be served by the time of compliance or 14 days after service of the subpoena, whichever is shorter. Fed. R. Civ. P. 45(c)(2)(B). Stutman received Watts' subpoena to testify and Watts' subpoena duces tecum on September 21, 2012 and Objections to the subpoena duces tecum were served on October 4, 2012.

## III.   ARGUMENT

Watts' subpoenas to Stutman flagrantly violate Rule 45(c) of the Federal Rules of Civil Procedure and constitute an abuse of judicial process. The standards that apply to party discovery under Rule 26 of the Federal Rules of Civil Procedure differ from the

1  standards that apply to non-party discovery under Rule 45.  The Ninth Circuit has held

2  that with discovery restrictions, "[a] witness' non-party status is an important factor to

3
   be considered." United States v. Columbia Broad Sys., Inc., 666 F.2d 364 (9th Cir.
4

5  1982).  Further, restrictions applied to discovery "may be broader when a nonparty is

6  the target of discovery." Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649

7
   (9th Cir. 1980).  More recently, district courts have reiterated the Ninth Circuit's intent
8

9  to protect non-parties in discovery.  The court in High Tech Med. Instrumentation, Inc.

10 v. New Image Indus, Inc., 161 F.R.D. 86 (N.D. Cal. 1995), held that "the Ninth Circuit

11
   has long held that nonparties subject to discovery requests deserve extra protection from
12

13 the courts." Id. at 88.

14      Watts' topics of testimony and requested documents in its subpoenas are

15
   irrelevant, overly broad and so far afield from the subject matter of the underlying
16

17 litigation that the subpoenas amount to nothing more than a fishing expedition and an

18 attempt to harass Stutman.  It should be abundantly clear to the Court that the

19
   motivation behind Watts' subpoena to testify and Watts' subpoena duces tecum issued
20

21 to Stutman is to undermine Stutman's representation of Liberty Mutual in other actions

22 pending against Watts.  Notwithstanding the privileged and unlimited nature of the

23
   requested information, Stutman's communications with Liberty Mutual or its insureds
24

25 regarding claims bear no relevance to plaintiffs' claims for compensation of out-of-

26 pocket losses and injunctive relief resulting from Watts' defective toilet supply lines.

27

28

1   In addition to the foregoing, under Rules 45(c)(3)(A)(i-iv), this court must quash

2   or modify the subpoena to testify and the subpoena duces tecum because 1) it does not

3
    allow for reasonable time for compliance, 2) it requires a representative from Stutman, a
4

5   non-party, to travel more than 100 miles from where that person resides, is employed, or

6   regularly transacts business in person, 3) it requires disclosure of privileged or other

7
    protective matter, and 4) it subjects the non-party to undue burden and unreasonable
8

9   costs.

10  **A.    This Court Must Quash Watts' Subpoena to Testify and
           Subpoena to Produce Documents and Things**
11

12  The Federal Rules of Civil Procedure provide that the issuing court must quash or

13
    modify a subpoena that "does not allow reasonable time for compliance," "requires a
14

15  person who is neither a party nor a party's officer to travel more than 100 miles from

16  where that person resides, is employed, or regularly transacts business," "requires

17
    disclosure of privileged or other protected matter," or "subjects a person to undue
18

19  burden." Under each of the four prongs of Rule 45(c)(3(A)(i-iv), this court must quash

20  or modify Watts' subpoenas.

21
22  **1. The Subpoena Duces Tecum Does Not Allow Reasonable Time
        for Compliance.**
23

24  The Court must quash the subpoena duces tecum because it does not allow a

25
    reasonable time for compliance. Under Rule 45(c)(3)(A)(i), a court must quash or
26

27  modify a subpoena that "fails to allow a reasonable time to comply." The subpoena for

28  the production of documents and things requires production by October 5, 2012. Even

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

STUTMAN'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

1   if the 6 categories of documents requested were not objected to on other grounds, it is

2   impossible for Stutman to comply with the production requests. For example, one of the

3   categories of things requested to be produced is "[a]ll TOILET CONNECTORS in your

4

5   possession, custody or control." Two weeks is insufficient time to comply with such a

6   burdensome and broad request. Accordingly, under Rule 45(c)(3)(A)(i), the Court must

7   quash Watts' subpoena duces tecum to Stutman.

8

9               **2. The Subpoena Requires Travel of More than 100 miles**

10         The Court must quash the subpoena to testify because it would be an extreme

11  hardship to require a representative of the law firm to travel across the country for a

12

13  deposition. Under Rule 45(c)(3)(A)(ii), a court must quash or modify a subpoena that

14  "requires a person who is neither a party nor a party's officer to travel more than 100

15  miles from where that person resides, is employed, or regularly transacts business in

16

17  person." *See*, Iorio v. Allianz Life Ins. Co. of North America, 2009 WL 3415689

18  (S.D.Cal. Oct. 21, 2009)(not reported)(the court granted the movants' motion to quash

19  holding the subpoenas at issue required the movants to travel more than 100 miles to

20

21  attend trial and none of them were traveling from within California). The Court in Price

22  Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56 (S.D.NY. 1998), held that the 100

23  mile limitation provided for in Rule 45, "establishes a simple mechanism for protecting

24

25  nonparties from burdensome discovery in an action in which they have little interest: the

26  subpoena must issue from, and the deposition must take place in, the district where the

27  witness is." Id. at 63.

28

1    Stutman is neither a party to this suit nor an officer of the plaintiffs.  The

2    deposition that Stutman has been commanded to attend will occur in Los Angeles,

3    California.  Stutman is located in Fort Washington, Pennsylvania, which is over 2,700
4
5    miles from Los Angeles.  This distance monumentally exceeds the 100 mile limitation

6    that Rule 45(c) imposes.  Requiring a representative from the law firm to travel to

7    California from Pennsylvania would create an undue burden on the firm by wasting
8
9    significant time and money.  For this reason, pursuant to Rule 45(c)(3)(A)(ii), the Court

10   must quash Watts' subpoena to testify issued to Stutman.

11
### 3. The Subpoena Requires Disclosure of Privileged or Other
12   ### Protected Matter

13       The Court must quash the subpoenas commanding Stutman to testify and for the
14
15   production of documents and things because the topics for testimony and the production

16   of documents entirely centers on privileged communications.  Under Rule

17   45(c)(3)(A)(iii), the issuing court must quash or modify a subpoena that "requires
18
19   disclosure of privileged or other protected matter, if no exception or waiver applies."

20       The Ninth Circuit has held that "[w]aiver [of privilege] occurs when there is an

21   existing right, a knowledge of its existence, and an actual intention to relinquish it, or
22
23   conduct so inconsistent with the intent to enforce the right as to induce a reasonable

24   belief that it has been relinquished." United States v. Reliance Ins. Co., 799 F.2d 1382,

25   1386 (9th Cir.1986). *See also*, United States v. Fort, 472 F.3d 1106, 1120 (9th Cir.
26
27   2007)(holding that waiver is "the intentional or voluntary relinquishment of a known

28   right"). Liberty Mutual **never** waived the attorney-client privilege, or the attorney-work

1  product doctrine.  To the contrary, Liberty Mutual has been steadfast in asserting

2  protection against discovery of any and all privileged and non-discoverable materials.

3
4  A copy of Liberty Mutual's Supplemental Responses to Watts' subpoenas duces tecum

5  asserting the attorney-client privilege and the attorney-work product doctrine are

6  attached hereto as Exhibit K.  Liberty Mutual also filed a motion to quash Watts'

7
8  subpoena to testify asserting privilege as the justification.

9  <center>*a. Attorney-Client Privilege*</center>

10  The topics commanded for testimony at a deposition are undeniably protected by

11
12  the attorney-client privilege.  Notwithstanding a few exceptions that do not apply in this

13  matter, the attorney-client privilege states that "[a] lawyer shall not reveal information

14  relating to the representation of a client." ABA Model R. Prof. Conduct 1.6 (2012).  The

15
16  privilege's purpose is to encourage full and frank communication between attorneys and

17  their clients and thereby promote broader public interests in the observance of law and

18  administration of justice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  In

19
20  Trammel v. United States, 445 U.S. 40 (1980), the Court held that "[t]he lawyer-client

21  privilege rests on the need for the advocate and counselor to know all that relates to the

22  client's reasons for seeking representation if the professional mission is to be carried

23
24  out." Id. at 51.

25  The attorney-client privilege is a sacred right and Liberty Mutual asserts the

26  privilege, prohibiting Stutman from disclosing any information or communications

27  made with an eye toward litigation.  "The attorney-client privilege protects confidential

28

1  disclosures made by a client to an attorney in order to obtain legal advice, ... as well as

2  an attorney's advice in response to such disclosures." In re Grand Jury Investigation

3
   (Corporation), 974 F.2d 1068, 1070 (9th Cir.1992).  The attorney-client privilege
4

5  applies to communications between lawyers and their clients when the lawyers act in a

6  counseling and planning role, as well as when lawyers represent their clients in

7
   litigation. United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996).  Testimony sought
8

9  regarding communications related to subrogation, arbitration and other litigation

10 between Liberty Mutual, its attorneys, the plaintiffs or the plaintiffs' attorneys are

11
   therefore protected by the attorney-client privilege because those communications were
12

13 made for the purpose of legal advice to Liberty Mutual.  Courts have determined that a

14 communication is protected if the client reasonably believes it is communicating with a

15
   lawyer in an effort to obtain legal advice.  Werder v. Marriott Int.'l, Inc. et al., W.D.Pa.,
16

17 September 20, 2012. (Memorandum Order is attached hereto as Exhibit L).

18      The subpoena to testify and subpoena duces tecum from Watts includes four

19
   similar categories of information:  1) all communications between Stutman and
20

21 plaintiffs regarding  plaintiffs' subpoena, 2) all communications between Stutman and

22 plaintiffs regarding the failure of any plastic coupling nut affixed to a toilet connector,

23
   3) all communications between Stutman and plaintiffs regarding any potential or
24

25 existing claims against Watts for property damage purportedly caused by the failure of a

26 plastic coupling nut affixed to a toilet connector, and 4) all communications between

27
   Stutman and plaintiffs regarding past, current, or future action relating to the failure of
28

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

any plastic coupling nut affixed to a toilet connector. (See Exhibit F and Exhibit G, Watts' subpoena to testify and Watts subpoena duces tecum). All four of these topics explicitly concern communications regarding legal matters involving the firm's clients wherein the client, Liberty Mutual, had an obvious expectation of privilege. Therefore, these topics are protected under the attorney-client privilege.

The subpoena duces tecum from Watts includes two additional categories of documents and things that are similarly and unquestionably entitled to protection from disclosure pursuant to the attorney-client privilege. Those categories include: 1) documents identifying the chain of custody of all toilet connectors Stutman received since 2000, and 2) production of all toilet connectors in the possession of Stutman. Responding to these unlimited requests would necessarily reveal confidential communications between the law firm and its clients. A production revealing confidential communications is strictly prohibited.

### b. Work Product Doctrine

The testimony and documents sought are also protected by the work-product doctrine. While the attorney-client privilege is intended to promote communication between attorney and client by protecting client confidences, the work product privilege is a broader protection, designed to balance the needs of the adversary system to promote an attorney's preparation in representing a client against society's general interest in revealing all true and material facts relevant to the resolution of a dispute. In re Subpoenas Duces Tecum, 738 F.2d 1367, 1371 (D.C. Cir. 1984). The attorney work-

1   product doctrine provides that materials, statements, or mental impressions prepared

2   with an eye towards the realistic possibility of impending litigation are non-

3   discoverable. Fed. R. Civ. P. 26(b). Here, the topics of testimony and the documents

4

5   requested involve communications between the law firm, its clients, plaintiffs, and

6   plaintiffs' attorneys regarding subrogation, arbitration, and litigation of the law firm's

7   clients' claims. If ordered to give testimony at the deposition on the four topics of

8

9   testimony or to produce documents responsive to the six categories of requested

10  documents, Stutman would be forced to discuss and reveal communications and

11  documents that were prepared in anticipation of litigation and with the belief that they

12

13  were protected under the work-product doctrine. Perrey v. Televisa, S.A. DE C.V., CV

14  09-06508 FMC (RZ), 2009 WL 3876198 (C.D. Cal. Nov. 18, 2009) (Not Reported)

15  (communications between counsel for a non-party and a party's attorney is "other

16

17  protected matter" within the meaning of the rule).

18      Since the topics for testimony and the categories of requested documents are

19  either protected by the attorney-client privilege and the work-product doctrine, the

20

21  Watts defendants seek disclosure of non-discoverable information. Therefore, it is

22  incumbent upon this Court to quash Watts' subpoena to testify and Watts' subpoena

23  duces tecum to Stutman.

24

25      **4. The Subpoena Subjects Undue Burden and Expenses**

26      The subpoenas subject Stutman, a non-party, to undue burden and expense

27  because of the broad scope of the subpoenas and their irrelevance to the underlying suit.

28

Under Rule 45(c)(3)(A)(iv), the issuing court must quash or modify a subpoena that "subjects a person to undue burden." The fact that Stutman is a non-party "is an important factor to be considered in determining whether to allocate costs on the demanding or producing party." Columbia Broad. Sys., Inc., 666 F.2d at 371.   As noted by the Ninth Circuit, non-party witnesses are "powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are a party." Id.

The subpoena power is a substantial delegation of authority, and those who invoke it have a grave responsibility to ensure that it is not abused. Thoefel v. Farley-Jones, 359 F.3d 1066, 1074-75 (9th Cir. 2004). Watts extensively violated the Federal Rules of Civil Procedure by not taking reasonable steps to avoid imposing undue burden or expense on Stutman.  Contesting subpoenas and responding to subpoenas is time consuming and costly, which must occur in this matter due to the broadness and irrelevance of the subpoenas.

Although relevancy is not among the enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena. Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D.Cal. 2005). Specifically, under Rule 45(c)(3)(A), "an evaluation of undue burden requires the court to weigh the burden of the subpoenaed party against the value of the information to the serving party," and in particular requires the court to consider "such factors as relevance, the need of the party for the documents, the breadth of the

1  document request, the time period covered by it, the particularity with which the

2  documents are described and the burden imposed." Travelers Indem. Co. v.

3
4  Metropolitan Life Insur. Co., 228 F.R.D. 111, 113 (D.Conn. 2005).

5      Stutman seeks to quash the subpoenas on relevancy grounds because the

6  information sought is irrelevant to the underlying action, and generally privileged since

7
8  it requests communication that occurred between clients and their attorneys with an eye

9  toward litigation.  The deposition testimony commanded and documents requested are

10  also unlimited in scope and would not reasonably lead to discoverable information. As

11
12  such, pursuant to Rule 45(c)(3)(A)(iv), it is incumbent upon the court to quash Watts'

13  subpoenas to Stutman.

14      **B.      The Court Should Issue a Protective Order Precluding the Deposition**
15          **And the Production of Documents from the Law Offices of Robert A.**
          **Stutman, P.C. Pursuant to Rule 26(b)(2)**
16
17      The Court should order a protective order under Rule 26(c) because the Court

18  needs to protect Stutman from further annoyance, embarrassment, oppression, or undue

19
20  burden or expense, which would be caused from defendants' subpoenas.   Watts'

21  subpoena to testify and Watts' subpoena duces tecum issued to Stutman are a

22  transparent attempt to undermine Stutman's representation of Liberty Mutual in other

23
24  litigations against Watts.  Notwithstanding the privileged and unlimited nature of the

25  requested information, Stutman's communications with Liberty Mutual or its insureds

26  regarding claims bear no relevance to plaintiffs' claims for compensation of out-of-

27
28  pocket losses and injunctive relief resulting from Watts' defective toilet supply lines.

LAW OFFICES OF ROBERT
A. STUTMAN, P.C.

STUTMAN'S MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND MOTION FOR SANCTIONS

1   Watts is abusing judicial process in an attempt to unlawfully gain information

2   from Stutman on subrogation claims that Liberty Mutual is litigating against Watts in

3   
4   other forums through discovery in the underlying class action litigation. Such misuse of

5   judicial process is improper and abusive; particularly here where the information sought

6   is entirely irrelevant to the underlying class action case.

7   
8   Under Federal Rule of Civil Procedure Rule 26(b)(1), "parties may obtain

9   discovery regarding any non-privileged matter that is relevant to any party's claim or

10  defense…relevant information need not be admissible at the trial if the discovery

11  
12  appears reasonably calculated to lead to the discovery of admissible evidence." The

13  Supreme Court has held that relevancy under Rule 26(b)(1) is "construed broadly to

14  encompass any matter that bears on, or that reasonably could lead to another matter that

15  
16  could bear on, any issue that is or may be in the case. Oppenheimer Fund, Inc. v.

17  Sanders, 437 U.S. 340, 351 (1978). However, the Supreme Court has stated that

18  "discovery, like all matters of procedure, has ultimate and necessary boundaries."

19  
20  Hickman v. Taylor, 329 U.S. 495, 507-08 (1947). See also, Pacific Gas and Elec. Co. v.

21  Lynch, 2002 WL 32812098, at *1 (N.D.Cal. August 19, 2002)(Not Reported).  Further,

22  the Supreme Court held that "the district courts should not neglect their power to restrict

23  
24  discovery where 'justice requires [protection for] a party or person from annoyance,

25  embarrassment, oppression, or undue burden or expense…'" Herbert v. Lando, 441 U.S.

26  153, 177 (1979)(citing F. R. Civ. P 26(c) in part).

27  
28

Rule 26(b)(2) states that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." This Court should issue a protective order under all three prongs of the Rule 26(b)(2) test.

### 1. The Discovery Sought is Unreasonable

This discovery is unreasonable because all of the topics commanded to be discussed at the deposition and all of the categories of documents to be produced are unquestionably privileged. The information sought by Watts' subpoenas requires Stutman to testify and produce all communications that transpired between Stutman and plaintiffs, including their attorneys. Any of the topics and documents that are not privileged or otherwise protected from discovery can more easily be obtained from the plaintiffs themselves who, as parties, are willing participants to the litigation and will submit to deposition testimony voluntarily. Additionally, the information requested is overly broad and will not reasonably lead to discoverable information that relates to the underlying products liability and consumer protection case or its defense. Therefore,

Stutman seeks a protective order under Rule 26(c), in light of Watts' blatant disregard of Rule 26(b)(2)(i).

## 2. The Party Seeking Discovery has had Ample Opportunity to Obtain the Information Sought

Watts already had ample opportunity to obtain any information sought that is not privileged. Some of the testimony is largely duplicative of the information already produced to defendants by Liberty Mutual in response to two subpoenas dated June 22, 2012 in this very matter. (See <u>Exhibit C</u> and <u>Exhibit D</u>, Watts' subpoenas duces tecum to Liberty Mutual dated June 22, 2012). The documents requested in Watts' June 22nd subpoenas to Liberty Mutual in categories 11-16 mirror the topics of testimony and document requests 2-4 of Watts' subpoenas to Stutman (compare <u>Exhibits C & D</u>, categories 11-16 with <u>Exhibits F & G</u>). One non-party has already complied in spending significant amounts of money preparing the answers for defendants. Since Watts desires to continue asking duplicative questions, the subpoena to testify and the subpoena to produce documents and things are grossly improper. The only reasonable conclusion is that Watts' purpose is to harass Stutman, interfere with its representation of its clients, and waste the firm's resources. Therefore, in light of defendants' blatant disregard of Rule 26(b)(2)(ii), it is necessary for this Court to issue a protective order enjoining Watts from seeking discovery from Stutman in this litigation pursuant to Rule 26(c).

## 3. The Burden and Expense of the Proposed Discovery Outweighs its Likely Benefit

1 Since the majority of the information requested is privileged and irrelevant, it is

2 extremely burdensome to command Stutman to testify and produce documents.

3
4 Moreover, it would be overly burdensome and expensive to send a representative 3,000

5 miles to testify when they are not a party to this litigation.  Not only is the travel

6 expensive, but the firm would also lose significant time and money in preparing the

7 representative to testify.
8

9 The real reason Watts is commanding Stutman to testify and produce documents

10 and things is to harass the firm.  There is no perceivable benefit to having Stutman send

11
12 a representative 3,000 miles to testify to topics that are privileged and have no relevancy

13 to a matter in which the law firm is not even a party.  Therefore, it is incumbent upon

14 the Court to issue a protective order under Rule 26(c), in light of defendants' blatant

15 disregard of Rule 26(b)(2)(iii).
16

17
18 **C.    The Court Should Award Sanctions, Reasonable Expenses, and Attorney's Fees.**

19
20 **1.  Under Rule 45(c)(1)**

21 Sanctions against Watts are appropriate in this matter under Rule 45(c) of the

22 Federal Rules of Civil Procedure because defendants caused an undue burden on

23
24 Stutman for the main purpose of harassment.  Rule 45(c)(1) provides for sanctions when

25 a court quashes a subpoena.  Specifically, Rule 45(c)(1) states that "[a] party or attorney

26 responsible for issuing and serving a subpoena must take reasonable steps to avoid

27 imposing undue burden or expense on a person subject to the subpoena. The issuing
28

court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Stutman notified defendants of the inappropriate nature of the subpoenas, but Watts failed to take corrective measures in revoking the subpoenas. Since Watts failed to take reasonable steps to avoid imposing undue burdens on Stutman, sanctions are warranted under Rule 45(c)(1).

Sanctions are particularly appropriate here where the subpoenas are meant to harass. Chevron Corp. v. Salazar, 2011 WL 7112979 at *3 (D. Or. Nov. 30, 2011). The Court in Chevron held that whether the subpoenas were issued in good faith is not relevant to whether sanctions are appropriate. Id. at 4. The only test is whether Watts took reasonable steps to avoid imposing undue burden or expense. They did not. Since defendants have failed to comply with Rule 45(c), sanctions are essential. Stutman will supplement this motion with a breakdown of its attorneys' fees and costs associated with opposing Watts' subpoenas.

**2. Under Rules 26(c)(3) and 37(a)(5)**

Reasonable expenses and attorney's fees are warranted in this matter under Rules 26(c) and 37(a) of the Federal Rules of Civil Procedure because the subpoenas are irrelevant to the matter underlying, unduly burdensome, and excessive in scope. Rules 26(c)(3) and 37(a)(5) of the Federal Rules of Civil Procedure provide for the award of costs and attorney's fees in connection with an application for a protective order. Specifically, Rule 26(c)(3) states that Rule 37(a)(5) applies to the award of expenses in

1  connection with motions for protective order, and Rule 37(a)(5) states that "the court

2  must, after giving an opportunity to be heard, require the party...whose conduct

3  necessitated the motion, the party or attorney advising that conduct, or both to pay the

4

5  movant's reasonable expenses incurred in making the motion, including attorney's

6  fees." In this case, Watts' conduct in pursing the meritless and improper deposition and

7  documents from Stutman has made this motion for a protective order necessary, and

8

9  warrants an award of costs and attorney's fees. Stutman will supplement this motion

10  with a breakdown of its attorneys' fees and costs associated with opposing Watts'

11  subpoenas.

12

13                                **CONCLUSION**

14        For all of the foregoing reasons, Stutman moves this Court to quash Watts'

15  subpoena to testify and Watts' subpoena duces tecum to Stutman, to issue a protective

16  order enjoining Watts from seeking discovery from Stutman in connection with this

17

18  matter, and in addition, to award sanctions, costs, and attorney's fees.

19

20                                     LAW OFFICES OF ROBERT A.
                                       STUTMAN, P.C.
21

22                                          /s/ Ahmed S. Diab
                                       By:_____
23                                     Ahmed S. Diab, Esq., SBN 262319
                                       750 B Street, 33rd Floor
24                                     San Diego, CA 92101
                                       **Office**: (619) 937-6272 ext. 210
25                                     **Fax**: (619) 374-1678
                                       *Attorneys for Liberty Mutual Insurance*
26                                     *Company*

27

28